# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MARTENS | : | Case No. 2:12-cv-456 |
| | : | J. Frost |
| Plaintiff, | : | Mag. J. Kemp |
| | : | |
| v. | : | |
| | : | |
| THE OHIO STATE UNIVERSITY | : | |
| MEDICAL CENTER | : | |
| | : | |
| and | : | |
| | : | |
| MARNI GREVENOW | : | |
| c/o Jonathan K. Stock, Esq. | : | |
| Organ Cole & Stock LLP | : | |
| 1335 Dublin Road, Suite 104D | : | |
| Columbus, OH 43215 | : | **PLAINTIFF'S FIRST AMENDED** |
| | : | **COMPLAINT WITH JURY DEMAND** |
| and | : | **ENDORSED HEREON** |
| | : | |
| KEVIN SHIVELY | : | |
| c/o Jonathan K. Stock, Esq. | : | |
| Organ Cole & Stock LLP | : | |
| 1335 Dublin Road, Suite 104D | : | |
| Columbus, OH 43215 | : | |
| | : | |
| Defendants. | : | |

Plaintiff George Martens, complaining of Defendant Ohio State University Medical Center, Inc., Defendant Marni Grevenow, and Defendant Kevin Shively, alleges as follows:

## PARTIES

1. Plaintiff George Martens ("Plaintiff") is a resident and citizen of the State of Ohio.

2. Defendant Ohio State University Medical Center ("Defendant OSUMC" or "OSU" or "University Health System") is an Ohio corporation affiliated with a public university providing medical services located in Franklin County, Ohio.  Defendant OSUMC is an

employer within the meaning of federal and state law.  Defendant OSUMC is the recipient of federal financial assistance.

3. Defendant Marni Grevenow ("Defendant Grevenow") is an employee of OSUMC.  At all times material hereto, Defendant Grevenow acted both in her official capacity as agent for Defendant OSUMC and/or in her individual capacity, as well as in the course of her employment.  She is sued individually and in her official capacity.

4. Defendant Kevin Shively ("Defendant Shively") is an employee of OSUMC.  At all times material hereto, Defendant Shively acted both in his official capacity as agent for Defendant OSUMC and/or in his individual capacity, as well as in the course of his employment.  He is sued individually and in his official capacity.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States.  Plaintiff's Count I arises under Title VII of the Civil Rights Act of 1964, *et. seq.* ("Title VII"), Count II arises under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Count III arises under 42 U.S.C § 1983 and the United States Constitution.

6. Venue is proper in the Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events giving rise to these claims occurred in this district.

7. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") under its worksharing agreement with the Ohio Civil Rights Commission.

8. Plaintiff was issued a Notice of Right to Sue, and this Complaint is filed within 90 days of his receipt of the Notice.

## **FACTUAL ALLEGATIONS**

9. Plaintiff is a male highly accomplished medical technologist.

10. Plaintiff began his employment with Defendant as a Lead Technologist in its Transfusion Medicine Department in May 2007.

11. Plaintiff was at all relevant times qualified for the positions that he held with Defendant OSUMC.

12. Throughout his tenure, Plaintiff received excellent reviews and numerous commendations and pay raises for his work.

13. Defendant OSUMC hired Defendant Grevenow on or about March 15, 2010 as the new Transfusion Service Manager in Plaintiff's department.

14. In March 2010, Plaintiff complained to the Laboratory Director, Defendant Shively, verbally and in writing that another Lead Technologist was violating Federal Drug Administration ("FDA") regulations and federal law, and Plaintiff provided Shively with proof of the violations and that Defendant OSUMC's employees had covered up the violations.

15. Plaintiff's complaints involved a matter of public concern, and he made them as a citizen, not to fulfill a responsibility of his position.

16. Grevenow acknowledged the unlawful practice and defended it in emails to other management.

17. On or about March 23, 2010, Plaintiff witnessed a workplace violence incident by coworker Tracy Sidel, who is Caucasian and not disabled, and Plaintiff informed Grevenow and Shively of the incident.

18. Plaintiff then was interviewed in an HR investigation led by Colleen Rupp that attempted to blame the victim of the incident.

19. Plaintiff told Rupp that Sidel was violent towards the victim, and that Sidel had told Plaintiff she "wanted to beat the crap out of her" and "grab her neck and choke her".

20. At this time, Grevenow and Defendant OSUMC's Human Resources ("HR") department allegedly placed Plaintiff on an unwarranted, three-month Performance Improvement Plan ("PIP"), but at the time told Plaintiff that the document was only a communication of job expectations under Grevenow's new management.

21. The "PIP" required Plaintiff to attend numerous workshops and meetings with Grevenow in addition to his already assigned duties; nonetheless, Plaintiff successfully completed the steps outlined in the "PIP" within the three-month time frame.

22. On or about September 2010, Plaintiff again witnessed workplace violence by Sidel against an Asian employee, which he reported to Grevenow and HR.

23. Sidel then threatened and was verbally abusive towards Plaintiff in a meeting with Grevenow, and Plaintiff complained about the threats.

24. In response to the violent incident against the Asian coworker, management and HR gave Sidel only a one-day paid suspension and never disciplined Sidel for the first violent incident or her retaliatory threats against Plaintiff, and Plaintiff protested the light discipline Sidel received.

25. On or about August 24, 2010 Plaintiff became disabled at work and took leave as an accommodation for his disability for three weeks.

26. Grevenow and Shively then met with Plaintiff in September 2010 and told him he was being moved to the less desirable third shift from second shift for a "special project" that would begin once Plaintiff returned to work after his leave.

27. Defendant OSUMC did not move Plaintiff back to second shift until on or about November 15, 2010, and then he was given only menial tasks and training.

28. Shively presented Plaintiff with a 12-week Transitional Work Agreement ("TWA") on or about November 1, 2010 that outlined accommodations for Plaintiff's disability and told him he could be fired if he did not sign the TWA, even though Plaintiff protested some of the accommodations as unnecessarily restrictive.

29. Also in November 2010, Plaintiff complained that Grevenow terminated another employee for taking disability leave.

30. Defendants then short-staffed Plaintiff's shift, creating more work for Plaintiff, and denied his repeated requests for assistance.

31. Defendants staffed only two technologists for Plaintiff's shift, although Grevenow had previously determined that six techs were the minimum requirement for second shift.

32. Grevenow began a campaign of soliciting reports and negative feedback regarding Plaintiff.

33. On or about December 5, 2011, Plaintiff received a call from a coworker regarding a patient's blood type, and Plaintiff responded with advice as to how to proceed that was compliant with Defendant OSUMC's policies and federal regulations, and told the coworker to consult with a physician.

34. That Monday, Grevenow and Shively presented Plaintiff with a Written Reprimand about the advice they claimed Plaintiff had given his coworker, but refused to consider his explanation as to why the advice was correct or that of the coworker, who supported Plaintiff.

35. The reprimand intentionally misstated and omitted facts favorable to Plaintiff and was contrary to basic scientific knowledge.

36. Plaintiff complained to HR that Grevenow and management were retaliating and discriminating against him on or about December 7, 2010, and in the complaint he also brought

5

forth concerns that blood bank employees and/or managers falsified blood bank records, violated FDA regulations, and covered up this unlawful activity.

37. Plaintiff's complaints involved a matter of public concern, and he made them as a citizen, not to fulfill a responsibility of his position.

38. On or about December 20, 2010, only 13 days after Plaintiff complained to HR, Grevenow and Shively told him for the first time that the May expectations document was a PIP and that the PIP was still in effect, accused Plaintiff of stealing and filing a fraudulent Workers' Compensation claim, and told him that he needed to be trained and changed to a different shift because they thought he was incompetent.

39. Plaintiff again complained to HR on or about December 21, 2010 that management was retaliating and discriminating against him and was advised to file a formal written complaint.

40. In response, Defendant OSUMC's HR representative opined to Plaintiff that he could no longer perform his job.

41. The next day, Plaintiff filed a formal complaint of discrimination and retaliation based on his disability and reports of unlawful activity.

42. Near the expiration of Plaintiff's TWA that set forth accommodations for his disability - a 15-minute break every 2 hours and a weight restriction of 20 pounds - Plaintiff informed Shively that he needed to extend the TWA, but Shively refused to do so.

43. Instead, Grevenow and Shively arbitrarily shortened Plaintiff's TWA by two weeks and forced Plaintiff on or about January 4, 2011 to take unpaid medical leave, because Plaintiff had not made enough progress with his disability, and Defendant OSUMC would not allow him to work with the restrictions his doctor had ordered and were outlined in the TWA.

6

44. Plaintiff complained to HR about disability discrimination and Defendant OSUMC's refusal to accommodate his disability, and was eventually brought back to work after six weeks' unpaid leave, but only after his weight restriction was lifted.

45. When Plaintiff tried to return to work on February 14, 2011, Grevenow and Shively told him for the first time that he would be returning to a different shift, gave him an attendance occurrence for a shift they never told him he was scheduled for, and sent him home without pay.

46. Plaintiff filed another HR complaint protesting the attendance writeup as retaliatory and discriminatory.

47. Grevenow also forced Plaintiff to undergo a complicated and time-consuming "annual" competency assessment, claiming she needed proof he could still perform his job because he had been out on leave, even though he had successfully completed an assessment only nine months earlier.

48. Other female, non-disabled and/or non-complaining Technicians who had taken extended time off in the past were not forced to take another competency assessment on their return.

49. Grevenow also improperly backdated Plaintiff's leave time so that Plaintiff would exhaust his leave allowance earlier and she could hire a non-disabled, non-complaining person to replace him.

50. While Plaintiff was on forced unpaid medical leave, Defendant OSUMC replaced him with a non-disabled, non-complaining Lead Technician, and this employee replaced Plaintiff permanently after he was terminated.

51. In addition to the unwarranted PIP, reprimands, and attendance occurrence, Grevenow and Shively throughout the latter half of 2010 and 2011 exhibited open hostility

towards Plaintiff and his work, excessively scrutinized his work and whereabouts, encouraged hostility towards Plaintiff from his coworkers, forced him to do more work than his coworkers, berated him regarding trivial matters, and constantly demanded without justification extra documentation regarding his work.

52. Grevenow and Shively did not subject non-disabled and/or non-complaining subordinates to similar discipline, treatment, requirements and scrutiny.

53. Plaintiff's counsel sent a letter to Defendant OSUMC on March 1, 2011 complaining of discrimination and retaliation.

54. Defendant OSUMC's HR investigation was concluded on or about March 24, 2011 and provided no relief for Plaintiff from his December and February written warnings, his hostile work environment, or his supervisors' retaliatory actions.

55. In the investigation report, HR told Plaintiff he could not complain to HR again without "direct evidence."

56. Grevenow, Shively, and HR Director Thomas Ramee brought Plaintiff up on disciplinary charges related to the discriminatory and retaliatory competency exam less than two weeks after the HR investigation closed, and ultimately placed Plaintiff on suspension on April 24, 2011 for those charges.

57. Defendants terminated Plaintiff on or about May 25, 2011 for alleged failures on the competency exam and vague accusations of unspecified errors and policy violations.

## COUNT I
### (Gender Discrimination/Retaliation - Title VII)

58. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

59. Plaintiff is male.

60. Defendant OSUMC's conduct in discriminating against Plaintiff includes, but is not limited to, treating him less favorably than similarly situated, female employees and terminating his employment on account of his gender in violation of Title VII.

61. Plaintiff complained to Defendant OSUMC that it was discriminating against him because of his gender.

62. Plaintiff had a reasonable belief at the time of his complaint that Defendant OSUMC was violating Title VII.

63. Defendant OSUMC unlawfully retaliated against Plaintiff after he engaged in activity protected by Title VII.

64. Defendant OSUMC's conduct was intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's legal rights.

65. As a direct and proximate result of Defendant OSUMC's unlawful conduct, Plaintiff has suffered damages and is entitled to judgment and compensation.

66. In pleading this Count as an alternative theory of relief, Plaintiff does not waive his allegation that his termination was solely due to his disability under the Rehabilitation Act.

## COUNT II

**(Disability Discrimination/Retaliation/Failure to Accommodate – Rehabilitation Act)**

67. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

68. Plaintiff is disabled, has a record of a disability, and/or was perceived by Defendant OSUMC as disabled.

69. Plaintiff was fully qualified for his position at all relevant times.

70. Plaintiff requested reasonable accommodations for his disability, and Defendant OSUMC denied those accommodations without justification.

71.     Defendant OSUMC's discriminated against Plaintiff by treating him less favorably than similarly situated, non-disabled employees and terminating his employment solely because of his disability in violation of the Rehabilitation Act.

72.     Plaintiff complained to Defendant OSUMC that it was discriminating against him for his disability and was improperly refusing to accommodate his disability, and was retaliating against him for requesting accommodations for his disability.

73.     Plaintiff had a reasonable belief at the time of his complaint that Defendant OSUMC was violating the Rehabilitation Act.

74.     Defendant OSUMC took adverse action against Plaintiff in retaliation for activity protected by the Rehabilitation Act including but not limited to his complaints of discrimination and his requests for accommodation for his disability.

75.     As a direct and proximate result of Defendant OSUMC's unlawful conduct, Plaintiff has suffered damages and is entitled to judgment and compensation.

## COUNT III

**(Violation of the First Amendment – 42 U.S.C. §1983)**

76.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

77.     Defendants' conduct described above unlawfully and unconstitutionally deprived Plaintiff of his rights to free speech in violation of the First Amendment to the United States Constitution.

78.     Plaintiff engaged in speech protected by the First Amendment of the U.S. Constitution.

79.     Defendants terminated and otherwise retaliated against Plaintiff for engaging in that protected speech.

80. Defendants' actions were wilful, wanton, malicious, and/or in reckless disregard of Plaintiff's constitutional rights.

81. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered injuries and damages for which he is entitled to recovery and/or injunctive relief.

82. Plaintiff is entitled to judgment pursuant to 42 U.S.C. §1983.

83. In pleading this Count as an alternative theory of relief, Plaintiff does not waive his allegation that his termination was solely due to his disability under the Rehabilitation Act.

**WHEREFORE**, Plaintiff demands judgment against Defendant(s) as follows:

(a) That Plaintiff be awarded injunctive relief ordering Defendant(s) to reinstate him to his employment;

(b) That Plaintiff be awarded injunctive relief preventing Defendant(s) from further unlawful activity;

(c) That Plaintiff be awarded all lost pay and benefits, and front pay;

(d) That Plaintiff be awarded compensatory damages;

(e) That Plaintiff be awarded liquidated damages;

(f) That Plaintiff be awarded punitive damages;

(g) That Plaintiff be awarded reasonable attorneys' fees and costs;

(h) That Plaintiff be awarded prejudgment interest;

(i) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than his compensation over several, separate tax years; and

(j) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

       Respectfully submitted,

        /s/ *Elizabeth S. Loring*
       Elizabeth S. Loring (0076542)
       Trial Attorney for Plaintiff
       FREKING & BETZ, LLC
       525 Vine Street, Sixth Floor
       Cincinnati, OH  45202
       (513) 721-1975/Fax: (513) 651-2570
       *eloring@frekingandbetz.com*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

       /s/ *Elizabeth S. Loring*

## CERTIFICATE OF SERVICE

  I hereby certify that on _____, 2012 a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail, e-mail and/or facsimile to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's System.

       /s/